# CHARLESTON.

### CAIN *v.* FISHER.

Submitted March 8, 1905.    Decided March 28, 1905.

1. TAX SALE—*Sale by Sheriff—Incorrect Description of Property Sold.*

   A purchaser at a tax-sale of property, charged on the land book and sold by the sheriff for non-payment of taxes, as part of a certain town lot, in the name of a person who, in fact, owned the entire lot, acquires, by virtue of the provision of section 25 of chapter 31 of the Code, relating to mis-statement of the quantity of land so charged and sold, the right, title, interest and estate of the person so charged with the taxes thereon in and to the entire lot, by obtaining a deed therefor under such purchase.  (p. 496.)

2. WARRANTY OF TITLE—*Breach of Warranty by Tax Sale.*

   Where land has been conveyed by deed with a covenant of special warranty, a subsequent sale thereof for non-payment of taxes, charged thereon against the grantor prior to the conveyance, and while he owned the land, constitutes a breach of the covenant of warranty.  (p. 495.)

3. WARRANTY OF TITLE—*Breach of Rights of Vendee.*

   Failure of the grantee, in such case, to prevent the sale by payment of the taxes or redemption of the land from delinquency and sale, neither bars his action on the covenant nor mitigates the damages.  (p. 498.)

4. WARRANTY OF TITLE—*Incumbrances — When Covenants of Title Broken.*

   Though a covenant of warranty is not a covenant against incumbrances, an incumbrance which eventuates in an eviction of the covenantee works a breach of such covenant.  (p. 494.)

Appeal from Circuit Court, Berkeley County.

Bill by Ignatius Cain against J. T. Fisher and others. Decree for plaintiff, and J. T. Fisher appeals.

*Affirmed.*

C. O. STRIEBY, for appellant.

FLICK, WESTENHAVER & NOLL, for appellee.

POFFENBARGER, JUDGE:

J. T. Fisher, a resident of Winchester, Virginia, obtained this appeal from a decree of the circuit court of Berkeley county, requiring him to pay to the plaintiff, Ignatius Cain, the sum of $363.00, with interest thereon from the first day of October, 1903, as damages sustained by the plaintiff, in consequence of a breach of a covenant of special warranty in a deed, by which Fisher had conveyed to Cain a certain lot in the town of Elkins, in Randolph county, said sum being the purchase money of said lot with interest thereon to the date of the decree. The jurisdiction in equity is founded upon an attachment levied upon real and personal property in the county of Berkeley, owned by the defendant.

The deed, containing the covenant, bears date March 28, 1892, and conveys a lot described as "Lot No. 138 in Block 20" on the plat of the town of Elkins. At the time of the conveyance, there was a lien on the lot for taxes assessed thereon against Fisher for the year 1891. This lien dated from the 1st day of April, 1891. Code chapter 31, section 1, chapter 29, section 39, chapter 47, section 36, chapter 49 section 6. For non-payment of said taxes, the lot was returned delinquent, presumably before the first Monday in June, 1892, and sold by the sheriff in the month of November, 1893, to C. H. Scott, who procured the deed therefor, under his purchase, on the 1st day of December, 1894, and, afterwards, sold the lot to James Hanley. The lot seems not to have been in the actual possession of any one, at the time of the conveyance by Fisher to Cain, nor until after Hanley purchased it in 1895.

An assignment of error is founded on the action of the court in overruling the demurrer, but, as no reference is made to it in the brief and no defect in the bill is perceived, it is unnecessary to consume time and space in discussing it.

It is said that the court should have found for the defendant on the merits of the case. This raises practically all the questions in the case, the most important of which are as

follows: Does a sale of the property for taxes assessed thereon against the grantor, prior to the conveyance, constitute a breach of such covenant? 2. Is the tax deed here involved void? 3. Was it the duty of the plaintiff to pay the taxes or redeem the land and thus minimize the damages? 4. Had the taxes been paid so there could have been no valid sale?

The negative response of counsel for the appellant to the first question is based upon the character of the covenant. It being one of special warranty, which is not strictly a covenant against incumbrances, he says the tax sale does not constitute a breach of it. The only difference between a covenant of special warranty and a covenant of general warranty, is that the former makes the grantor responsible for any eviction by any person claiming, or who shall claim, by, through or under him, while the latter makes him responsible for eviction or loss of title by reason of a claim or demand by any person whomsoever. Code, chapter 72, sections 13, 14; Rawle on Cov. for Tit. section 126; 11 Cyc. 1077. The distinction, therefore, amounts to nothing when the ouster or loss of title results from an act of the grantor himself or some person claiming under him. As the taxes, for which the lot was sold, accrued while the grantor owned the property, the character of the covenant is immaterial. It is further contended in this connection, however, that the lien for taxes was only an incumbrance upon the property and that an incumbrance works no breach of a covenant of warranty but only of a covenant against incumbrances. That a covenant of warranty is not strictly a covenant against incumbrances is true, but an incumbrance may, and often does, work a breach of a covenant of warranty by resulting in a loss of title and eviction of the grantee. No right of action accrues under a covenant of warranty by reason of the fact that there is an incumbrance upon the property, but when that incumbrance results in a sale of the property, taking away the title of the grantee, a right of action does accrue on the covenant of warranty. "The eviction of a grantee by reason of an encumbrance resting on the land at the time of its conveyance is a breach of the covenant of warranty in the deed to him, unless, knowing of its existence at the time of the execution of the deed, he has agreed to discharge it." 11 Cyc. 1123; *Clark* v.

*Winchell*, 53 Vt. 408; *Van Wagner* v. *Van Nostrand*, 19 Ia. 422; *Leonard* v. *Cury*, 65 S. W. 124; *Rickert* v. *Snyder*, 9 Wend. 416. The covenant of general warranty, as used in this country, corresponds more nearly to a covenant for quiet enjoyment than to the common law warranty. *Dickinson* v. *Hoomes*, 8 Grat. 353; 11 Cyc. 1076, and cases there cited; Rawle on Cov. for Tit. section 112. "And at the present day it has often been urged, in cases of apparent hardship, that the modern covenant of warranty should do more than protect against 'the consequences incident upon a defective title,' and should, at least to some extent, comprise within itself the virtues of all the covenants for title, yet in the absence of peculiar local construction, and, as has been suggested, with the exception of a somewhat peculiar effect given to its operation by way of estoppel or rebutter, such a construction is generally denied, and the covenant of warranty is held to be simply a covenant for quiet enjoyment, the only difference being that under the latter, as sometimes expressed, a recovery may be had where it would be denied under the former." Rawle on Cov. for Tit. section 114. Hence, it is in substance and effect a guaranty against actual eviction and loss of title, constituting constructive eviction. *Yancey* v. *Lewis*, 4 H. & M. 390; *Tabbs's Adm'r* v. *Binford*, 4 Leigh 132; *Rex* v. *Creel*, 22 W. Va. 373; *Moreland* v. *Metz*, 34 W. Va. 119; *Knotts* v. *McGregor*, 47 W. Va. 566. Whatever, therefore, results in eviction and loss of title, be it an incumbrance or what not, gives a right of action on the covenant of warranty. It may be a lien for taxes eventuating in a loss of the property by a sale for their satisfaction, or a deed of trust resulting in a sale to satisfy the debt, or a recovery by some person holding a paramount title. Tax sales have been held in many cases to have created breaches of covenants of warranty, some of which were special warranties. *Rinehart* v. *Rinehart*, 91 Ind. 89; *Rundell* v. *Lakey*, 41 N. Y. 513; *Lumber Co.* v. *Anderson*, 13 Mo. App. 429; *Funk* v. *Cresswell*, 5 Clark (Ia.) 91; *Thomas* v. *Stickle*, 32 Ia. 71; *Richards* v. *Iowa Company*, 44 Ia. 304; *McCoy* v. *Lord*, 19 Barb. 18.

Has there been an eviction? Cain never had actual possession. The lot was unenclosed and unoccupied. After the tax sale and conveyance and the subsequent conveyance, by

the tax sale purchaser, to Hanley, it was enclosed by Hanley. He thereby asserted the tax title against Cain and took actual, hostile, open and notorious possession of the property. This undoubtedly constitutes an ouster of the covenantee. Until the title passed to Scott by virtue of the tax deed, the plaintiff was legally seized of the lot, and, for some purposes, the legal seizin is deemed to draw to it the possession of the land. Seizin, in law, is ownership with the right of immediate actual possession. *Garrett* v. *Ramsey*, 26 W. Va. 345, 369; *Hubbard* v. *Austin*, 11 Vt. 129; *Storrs* v. *Feick*, 24 W. Va. 606. It, therefore, gives constructive possession, unless there is an adverse possession or right in some other person by contract or operation of law, to the exclusion of the owner. *Storrs* v. *Feick*, 24 W. Va. 606; *Snider* v. *Meyer*, 3 W. Va. 198; Rawle Cov. Tit. 140. Destruction of Cain's Title by the tax sale and deed took away his constructive possession, thereby clearly working an eviction. Our decisions go still further and give a right of action on the covenant, as for a breach, in cases in which there could not be even constructive possession. When the land at the moment of execution and delivery of the deed is in the actual possession of a stranger under paramount title, so that the deed passes no title, no seizin, and, therefore, no right to possession, the covenant of warranty is deemed to be broken *eo instanti*, wherefore an immediate right of action arises. *Rex* v. *Creel*, 22 W. Va. 373. In such case, there is a mere constructive eviction. Here it may be consistently said there has been, not only a legal eviction, but also an eviction in fact, for the tax title has been effectually asserted against Cain by taking possession of the land under it. Had Cain been in actual possession he could not have retained it, if the tax deed is valid.

The charge of invalidity in the deed is based upon a departure in the granting part thereof from the record of the sale and recital in the deed in respect to the description of the lot. The report of the sheriff's sale, as recorded in the office of the clerk of the county court, and a recital in the deed, describe the quantity of land charged, and the quantity of land sold, as "Pt. Lot 138 B. 20." By the deed the entire lot was conveyed. Before procuring his deed, the purchaser, in obedience to the statute, caused a report to be made to

the clerk of the county court specifying the metes and bounds of the lot and, upon that, as well as upon the record of the sale, the deed is based. This report does not appear in the record of the case, but is referred to in the deed and the presumption is that the description found in the latter instrument conforms to that set out in the report.

As supporting his position, counsel for appellant relies upon *Jones* v. *Dils*, 18 W. Va. 759, in which the deed to a purchaser at a tax sale was declared void because it conveyed a less quantity of real estate than had been sold. The sheriff's report of sale showed that one hundred acres had been sold, but the purchaser took his deed for only eighty acres. The legislature very promptly provided for such cases, by declaring that no sale or deed should be set aside by reason of the conveyance by the deed of a less quantity of real estate than that mentioned in the list of sales made out and returned, if the real estate so conveyed by the deed, was,. in fact, the same which was sold as delinquent. Last clause of section 25 of chapter 31 of the Code. The case relied upon, however, would not be applicable had this curative provision not been inserted in the statute, for the reason that this deed conveys, not less, but more, land than is mentioned in the sheriff's report of sale. There is another provision of said section 25, clearly covering, and rendering harmless, the matter complained of, which reads as follows: "If more than one tract of land be charged as one, or the quantity thereof, or the residence of the party charged with taxes thereon, or the location of the real estate sold, or the district in which it is charged with taxes, be mis-stated, all such right, title, interest and estate therein as is hereinbefore mentioned, shall nevertheless pass to and be vested in the grantee in such deed." Fisher owned the whole of said lot No. 138, and the taxes charged to him on account thereof were the taxes on the whole lot, for there was no other entry on the book as to that lot in his name or in the name of any other person. Hence, the whole lot was taxed to him, returned delinquent and sold under the misdescription of part of No. 138 Block 20. It is clearly just such a mis-statement of quantity as is contemplated by the statute. It is in the form in which, as to a town lot, a mis-statement of quantity would easily and frequently occur. Such property is never taxed by the acre,

the square foot, square rod, or undivided interests.   It is always entered as a lot, a definite part of a  lot,  such as one-half,  one-fourth, one-eighth, etc., or indefinitely  as part of the lot.   If a man owned one-half of  a lot and it were erroneously  entered in  the land book  as one-fourth,  it would be a clear mis-statement of the quantity charged,  for the deed, upon reference to it,  would show just what he owned and the surveyor, in  making up his report after the sale,  would find that he owned one-half and not one-fourth.   In  the case of tracts of land the mis-statement would always consist of giving the wrong number of acres, for the quantity of  such real estate is always stated in acres.   The obvious purpose of the legislature was to  prevent failure in the prompt collection of taxes and  invalidity  in tax  sales and deeds,  resulting from mere clerical errors and mis-statements as  to  quantity.   It would be a  violent presumption  to  say  that it intended to obviate the consequences of  such errors in  respect to  tracts of land and  not in  respect to  the  other class of property taxed necessarily  as  town  lots.   In sections  18  and 19 of chapter 31 of the Code, and other chapters, the distinction between the two classes of property for the purposes of taxation is clearly marked out.   City and town property, laid out  and designated by lots, are properly entered in the land books as lots and parts of  lots.   Code  chapter 29, section 38.   The land books are prepared for such entries and they are always made in that way, in obedience to  the statute.   Nothing in the nature of the property suggests even a probable ground or reason for making such errors harmless  in  sales of  tracts of  land and allowing  them to constitute fatal defects in sales of town lots.   The evil is as great  in  the one case as in  the other.   Nor is there anything  in the language of the statute that indicates an intent to  make  any  distinction.   Tested by  the letter,  as well as  by  the spirit and reason,  of  the statute,  its  application to town  lots is plain and  unequivocal.

In support of  the  proposition embodied in the third question,  the argument is,  that,  as the plaintiff was a resident of the county  in which the lot was situated, for the greater part of the period within which  the proceedings by which he lost his title took place, . some of  which were  made known to the public by publication, he must be deemed to  have had notice

thereof and cannot be heard to complain of a loss which he might have prevented by paying the taxes or redeeming the land. In other words, it is claimed that he can only recover the amount which it would have cost him to prevent the sale, because all injury and damage beyond that amount is due to his own negligence. The only authority cited for this proposition is the text found in 28 Am. & Eng. Ency. Law (Old Edition) 850. What is said there relates to damages for the breach of covenants of title to personal property, as the cases cited in support of the text will show, and has no application to damages arising out of a breach of covenant of title to real estate. At the beginning of the article it is expressly stated that it relates to express warranties in sales of personal property. The damages disallowed on this ground in cases of breach of warranty of title to personal property are consequential damages, not the damages directly included in, and inseparable from, the breach. The principle is not applicable here. A part of the opinion in *Smith* v. *Parsons*, 33 W. Va. 644. concerning the duty of a covenantee to defend his title is quoted and relied upon in support of the proposition, but it, also, is inapplicable. A covenant of warranty is not a guarantee against mere groundless claims, not a guaranty against actions, but against eviction and loss of title by reason of a paramount title in some other person. Hence, it was held, in *Smith* v. *Parsons*, that money expended in defending a baseless action against the covenantee was not recoverable as damages for a breach of warranty. As between the grantor and grantee, the legal duty to pay the taxes before delinquency, and, that not having been done, to redeem the land thereafter, rested upon the former, and he cannot escape liability by showing that the latter could have partially protected himself. Moreover, it does not appear that the plaintiff had any actual notice of the existence of the tax lien or of the delinquency and tax sale proceedings. Constructive notice binds him in favor of the state and the purchaser, but not in favor of his grantor so as to relieve him from the effect of his covenant.

The effort to show payment of the taxes wholly fails for want of proof. No receipt is produced and nothing is offered to sustain it except the testimony of the defendant to the effect that the sheriff, at his request, rendered a bill for his

taxes for the year 1891, which he paid, believing it to include the taxes on the lot in question, but even the statement is not produced.

As the decree is plainly right, it will be affirmed.

*Affirmed.*

BRANNON, PRESIDENT, (*dissenting*):

I dissent because I regard the tax deed as void. A tax deed must rest on a valid assessment, delinquent and sale list. *Mosser* v. *Moore*, 49 S. E. 537, 56 W. Va. 478. All three in this instances were vague. "A description of property in an assessment roll which is so vague, indefinite and uncertain as to render it impossible to determine whether the whole or a part, or if a part, what part, of the land was intended to be assessed to the person named, is insufficient. And a description which states that the property is part of a larger tract, but does not clearly identify the specific and determinate part intended, is so inadequate as to render the assessment a nullity. For not only would such a description be inadequate to inform the owner of the taxing of his land, but a deed conveying a 'part' of a lot or tract would convey no legal title to any portion. The same objection applies to an assessment which merely describes the land as a certain number of acres in a specified tract, without locating or identifying the portion meant to be assessed." Black, Tax Titles, section 115. See 1 Blackwell, Tax Titles, sections 223, 229, 242. The statute referred to by JUDGE POFFENBARGER does not cure this fault, which by common law makes the deed void. The charge on the tax books, "Pt. Lot 138 B. 20," is vague. It is not misstatement of quantity; it is no statement at all of quantity. What is the quantity stated? None. It indicates perhaps part of the lot by the letters "Pt." What part? Ten feet, or forty feet. One-fourth, or one half? The entry does not tell. It is faulty, vague, uncertain description. Can you sell part of a man's tract or lot and make a deed for the whole? If mere misstatement of quantity, the statute would cure; but the entry does not purport to state quantity. *Jones* v. *Dills*, 18 W. Va. 759, is in point. It holds that if an entire tract is sold, there is no authority to make a deed for part. On like principle where a sale is of part a deed cannot be made for the whole.