# CHARLESTON.

ORA A. LEACH *v.* ALVA D. WEAVER *et als.*

Submitted September 7, 1921.   Decided September 20, 1921.

1. APPEAL AND ERROR—*Where Case is Certified on Overruling of General Demurrer, it will be Affirmed on Finding Bill Sufficient in any Particular.*

   Where a general demurrer has been interposed to a bill and overruled and the question of the ruling thereon is certifid to this court for review, on the lower court's own motion. the appellate court, upon finding the bill sufficient in any one particular, will affirm without inquiry as to the sufficiency of the bill in other particulars. (p. 52).

2. TAXATION—*Misdescription of Amount of Land Sold will Not Alone Invalidate Tax Sale.*

   Where there is a return of a delinquent list of lands properly assessed for taxation, giving the correct name of the owner, the true location of his tract, but describing it as containing 19 acres, whereas, the true number of acres owned is 13½ acres, and the delinquent list and return thereof is, in other respects, in conformity with the statute, such discrepancy in the acreage alone will not invalidate a tax deed to the interest of the owner in such tract, made in pursuance of a regular tax sale. (p. 52).

(LYNCH, JUDGE, absent).

Certified from Circuit Court, Barbour County.

Suit by Ora A. Leach against Alva D. Weaver and others. Demurrer to bill overruled, and case certified.

*Affirmed.*

*J. Hop Woods,* for plaintiff.
*George & Wilcox,* for defendant.

LIVELY, JUDGE:

Demurrer to the bill was overruled and the court has certified its decision in so ruling to this court for review.

The bill is to cancel a tax deed and remove it as a cloud on plaintiff's title.  Ora Leach, the plaintiff, has a deed to and possession of 23 acres and about 88½ poles of land on Laurel Creek of Valley River in Philippi District of Barbour County, the title to which was deraigned from John W. Male, who, in 1903, owned a tract of 190 acres, out of which the land in controversy was carved.     John W. Male conveyed 29 acres, 88½ poles to Amanda Male on May 4, 1904, who, in the winter of 1909, conveyed six acres to three grantees (2 acres to each) leaving remaining 23 acres and 88½ poles. On June 16, 1909, she conveyed out of the remaining acres a ten acre tract to John H. Male, which left her at that time 13 acres, 88½ poles.     On September 25, 1909, she conveyed all of this land back to John W. Male, describing it as the same land which was deeded to her on May. 4, 1904, by John W. Male. On March 23, 1910, John W. Male conveyed this land to Aaron Male, describing it as the land deeded to him by Amanda Male.     On April 13, 1910, Aaron Male deeded this same tract to Arch Male, describing it as the land deeded to him by John W. Male, March 23, 1910.     By a joint deed, August 1, 1912, Arch Male, Sr., and John H. Male (their wives joining therein) conveyed two tracts of land to Arch Male, Jr., and Hulda Male (his wife); the first tract described being that deeded by  Arch Male, Sr., and wife, and designated as the same land conveyed by John W. Male to Aaron Male on March 23, 1910, containing about 14 acres; and the second tract, which is designated as being conveyed to the grantee by John H. Male and wife, is described as the same land conveyed by Amanda to said John H. Male on June 16, 1909, and is described by metes and bounds and contains 10 acres.

The tax delinquency, which resulted in the tax deed in question, occurred in the year 1912, when Arch Male is shown on an excerpt of the delinquent list for that year as delinquent in the payment of taxes on a tract of 19 acres lying on Laurel Creek.     Plaintiff derived title to his land through Arch Male, Jr., who on November 7, 1914, conveyed his two tracts containing 24 acres more or less to Elias Gall, who

afterwards, on November 13, 1916, conveyed the land designated as composed of two tracts, one containing 13 and 33-100 acres, and the other 10 acres, to the plaintiff.

The tract of land returned delinquent for non-payment of the taxes of 1912 in the name of Arch Male and as containing 19 acres on Laurel Creek was sold by the sheriff in 1914 and purchased by T. H. Proudfoot for $4.45, who assigned the benefit of his purchase to Wm. T. George, to whom a tax deed was made by the County Clerk on December 22, 1915, and who afterwards conveyed the land to defendant A. D. Weaver on December 13, 1917.    The tax deed made to Proudfoot contains the same description, metes and bounds, as the 29 acre and 88½ poles conveyed by John W. Male to Amanda Male, dated the 4th day of May, 1904, and therefore includes the three tracts of two acres each conveyed by Amanda Male in the winter of 1909 to three grantees, Stella Male, Amanda Norris and Lucinda Croston, and also includes the 10 acre tract conveyed by Amanda Male to John H. Male and afterwards conveyed by him to the predecessor in title of the plaintiff on August 1, 1912.    The tax deed evidently takes in too much territory as shown by the bill and exhibits.    It will be seen from an inspection of the deed from Arch Male, Sr., to Arch Male, Jr., dated August 1, 1910, that the grantor only claimed to have about 14 acres by virtue of the deed to him from Aaron Male.    Again it will be seen from an inspection of the excerpt from the land book of 1912, Exhibit No. 1 with the bill, that John H. Male had his 10 acres on Laurel Creek, deeded to him by Amanda Male, assessed to him, and on which the taxes for that year were evidently paid.    The excerpt from the delinquent list, Exhibit No. 2, shows that he was not delinquent for that year. There is a presumption that a person has paid his taxes until it is otherwise shown.    *Cunningham* v. *Brown,* 39 W. Va. 588.    The same may be said of the owners of the three 2 acre tracts included in the boundaries of the tax deed.    But these owners are not parties and are not complaining of the cloud, if any, upon their titles.    From the allegations of the bill, and from the exhibits, it is shown that the tax deed, which in-

cludes in its metes and bounds the John H. Male 10 acre tract now owned by the plaintiff, is a cloud upon that title. Is this sufficient to sustain the bill? It does not appear on what grounds the circuit court overruled the demurrer. A proceeding of this kind is to test the sufficiency of a pleading. And where the appellate court finds one part of the bill sufficient where there has been a general demurrer which was overruled, it will affirm the decision without inquiry as to the sufficiency of the other parts. *Wheeling* v. *Telephone Co.,* 82 W. Va. 208.

But the specific questions certified by the court for answer are: (1) "Does the fact that the delinquent, Arch Male, had but 13½ acres of land, whereas he was returned delinquent for 19 acres of land in the year 1912, invalidate the deed to W. T. George, executed by the clerk of the county court of Barbour County? (2) Does section 25, chap. 31, Code, cure such defect in the assessment as propounded in question No. 1?"

The other points raised by counsel for defendant on the demurrer seem not to have been of sufficient importance or difficulty to influence the discretion of the trial judge and to cause him to certify them for review. The certification is on the court's own motion, and not on the joint application of the parties.

We are cited to *Cunningham* v. *Brown,* 39 W. Va. 589, to sustain the proposition that the misdescription of the quantity of land owned by Arch Male (19 acres instead of 13 acres 88½ poles) is fatally defective and avoids the tax deed. That case was where the 34 acres owned by Elizabeth Cunningham were omitted from the assessment for the year 1883, in her name, but, without her knowledge or notice, included as an undistinguished part of a larger tract of 65 acres and assessed in the name of John Cunningham, a former owner, returned delinquent in his name as a 65 acre tract and sold as his. The following year her 34 acre tract was placed on the land book in her name and was back taxed for the year 1883. The land having been assessed and returned delinquent in the name of another with an acreage nearly twice as

large as that owned by her, she could have had no notice, and the tax deed was not made valid by the curative section (now sec. 25, chap. 31, Code).    Moreover, the court held that her 34 acre tract not having been returned delinquent in her name for the year 1883, there was nothing to rebut the presumption that she had paid her taxes for that year.    We are also cited to *Metz* v. *Starcher,* 60 W. Va. 657, which holds that there must be a delinquent list returned in order that irregularities, errors and mistakes therein can be cured by the curative section.    The heading of the paper purporting to be a delinquent list was obscured by a paste board securely fastened to the paper by metallic rivets concealing the entire heading required by the statute, except a few words, and it was decided that such paper in such condition was not a delinquent list.    That case has no application here.

In the case at bar there is an assessment in the proper name of the owner, Arch Male, and a delinquent list showing delinquency in Arch Male for the year 1912.    It is true that the bill alleges that the delinquent list is defective because ''no certificate such as is required by law is made by the sheriff of said county to said delinquent list,'' as appeared from an excerpt from the delinquent list filed as an exhibit. Just what is meant by ''no certificate'' we are unable to say. Possibly it means the oath required to be appended under sec. 21, chap. 30, Code.    But it will be observed that the excerpt only is before us, and not the complete delinquent list.    It is not averred that no such affidavit appears on the delinquent list as returned.    The only question here is, whether the fact that Arch Male was returned delinquent for 19 acres instead of for 13½ acres would invalidate the tax deed.    It refers solely to the discrepancy in the amount of acreage charged from what should have been charged, (his true acreage), as shown by the delinquent list.    Section 25, chap. 31, Code, provides: ''And no irregularity, error or mistake in the delinquent list, or the return thereof; or in the affidavit thereto *** shall, after the deed is made, invalidate or affect the sale or deed.''    It also provides: ''If more than one tract of land be charged as one, or the

quantity thereof *** be misstated, all such right title, interest and estate as is hereinbefore mentioned, shall nevertheless pass to and be vested in the grantee in such deed.'' But if there was no such statute curing misstatement of the quantity, could Arch Male have been misled by the fact that his land was described as containing 19 acres? The assessment and delinquent lists, respectively, show that he was assessed and returned delinquent in his own proper name for a tract of land on Laurel Creek where he owned his 13½ acres, and we think the discrepancy in the acreage charged is not such an irregularity as to materially prejudice or mislead even if the curative statute did not so state. He had notice of the assessment of his land, and the excess acreage charged to him on the assessment, and its appearing on the delinquent list was sufficient to arrest his attention and impel an investigation. We have held in numerous cases that a departure from or inaccuracy in the name of the person assessed and delinquent is not sufficient to render void the tax deed. See *Jarrett* v. *Kimbrough,* 105 S. E. 918, where the name on the delinquent list and proceedings was ''Norena Lambert'' instead of Norma E. Lambert; *Friedman* v. *Craig,* 77 W. Va. 223, where the owner's name on the delinquent list appeared as ''Joseph Fredman'' instead of Joseph Friedman. However there are other cases involving assessments where there have been such glaring errors in the names of the persons assessed, that they have been held to be fatal. *Male* v. *Moore,* 70 W. Va. 448, where the assessment was made to ''Hoonbrook'' when the owner's name was Hornbrook; *Collins* v. *Reger,* 62 W. Va. 195, where the assessment was in the name of ''Martha Hedrick'' instead of Martha Helmick. These cases serve to illustrate that if the departure or inaccuracy is only such as would put the owner on inquiry, or that a reasonable person would not be misled or deceived, then there is no fatality to the tax deed. These holdings are illuminating on the question here involved, inaccuracy in the acreage charged and returned delinquent, even if the curative statute did not expressly cure inaccuracies in the quantity of a tract. But the curative section expressly says that if the quantity

of land charged be misstated, nevertheless the title of the owner shall pass by the tax deed. That clause controls this case. The acreage need not be truly stated. It would be impossible and impracticable to do so in all cases. See *Coal Co.* v. *Burgess,* 86 W. Va. 16.

In *Cain* v. *Fisher,* 57 W. Va. 492, we held that where the record of the sale and recital in the deed were not in accord, the purchaser at the tax sale took the entire interest of the delinquent in the lot of land, all of the lot, although it was charged on the land book and sold by the sheriff as a part of the lot, section 25, chap. 31, Code, operating to cure inaccuracy in the description. And where the assessment and sale of a town lot, designated by number, was made, and the tax deed included a part of the lot designated and part of an adjoining lot owned by the delinquent, the deed was upheld under the curative section. *Roby* v. *Wilson,* 84 W. Va. 738.

We are of the opinion that the incorrect acreage set out in the delinquent list of 1912, being 19 acres instead of 13½ acres (the true amount), in the name of Arch Male and alleged to have been owned by him at that time, does not, alone, invalidate the tax deed executed by the county clerk to defendant George; and so answer the specific question certified.

*Affirmed.*