# CHARLESTON.

## MILLER *et al. v.* ZEIGLER.

Submitted January 20, 1898—Decided March 26, 1898.

1. ATTACHMENT—*Defective Order—Amendment.*
   An order of attachment, not signed by the clerk, is not void, but only voidable, and may be amended in that respect.   (p. 436).

2. ATTACHMENT—*Defective Order—Amendment.*
   An order of attachment not signed when issued, but later, and before a motion to quash it, signed by the clerk, is good, against

such motion to quash, as the court ought to allow such amendment.   (p. 486).

3. COURTS' AUTHORITY—*Clerical Errors—Amendment.*
   A court may at any time, without statute authority, through its inherent power, allow merely clerical errors and omissions of its officers to be corrected or amended.   (p. 486).

4. ATTACHMENT—*Supplemental Affidavit.*
   A supplemental affidavit in an attachment need not state expressly that the additional facts came to affiant's knowledge since the first affidavit.   (p. 488).

5. EQUITY JURISDICTION—*Attachment—Dismissal of Suit.*
   Where a suit in equity, on a debt not mature when begun, rests for jurisdiction only on attachment, and that fails, the suit should be dismissed.   (p. 489).

Appeal from Circuit Court, Cabell County.

Suit by Jacob Miller, Sons & Co. against Jacob Zeigler in attachment proceedings.   From a decree dismissing the suit, plaintiffs appeal.

*Reversed.*

SIMMS & ENSLOW and HERBERT FITZPATRICK, for appellants.

CAMPBELL, HOLT & CAMPBELL, BROWN, JACKSON & KNIGHT, and RUSSELL G. QUARRIER, for appellee.

BRANNON, PRESIDENT:

Jacob Miller, Sons & Co. instituted this suit in equity, with attachment, against Jacob Zeigler; and, the attachment having been quashed and the suit dismissed, the plaintiffs appeal.

The defect in the attachment is that it was not signed by the clerk.   There is conflicting evidence as to this; but let us say that when issued and placed in the sheriff's hands, and when levied, it was not signed, but was later signed by the clerk, and was so when the motion to quash was made.   Is an attachment void for want of a clerk's signature?   Or does it render it merely voidable?   The distinction is important, since, if only voidable, it may admit of amendment.   I know that some cases hold that this defect makes the writ incurably void.   Wade, Attachm. §

121; 1 Shinn. Attachm. 361. These authors do not so lay it down as law, nor does that excellent work, 3 Am. & Eng. Enc. Law, (2d Ed) 208. They do show that it is essential, and that such defect renders the attachment irregular, but not void, in the sense of absolute nullity. A leading case cited for ·the proposition is *Wiley* v. *Bennett,* 9 Baxt. 581; but the constitution demanded the signature of the clerk, and this requirement, being in the constitution, was in the highest sense mandatory, and vitiated the writ, as did the failure to make a writ run in the name of the State, in *Gorman* v. *Steed,* 1 W. Va., 1. But, upon a review of the books, I conclude that the defect, though it makes the order of attachment quashable on motion, does not make it void beyond cure. *Ambler* v. *Leach,* 15 W. Va., 677, held that a summons commencing an action, not signed by the clerk, did not render it void, in the sense of null, but voidable on motion; and in *Laidley* v. *Bright,* 17 W. Va., 790. JUDGE GREEN says such is the great weight of authority. This derives strong support in *Hogue* v. *Corbit,* (Ill. Sup.) 41 N. E. 219. I think so, and think, too, that it is the sensible view, overruling a mere technicality arising from inadvertence of public officers, which ought not to prejudice the public. I hold that when the motion to quash was made, had the signiture then been absent, the court ought to have given leave to amend. Courts have inherent power over their process, and may allow clerical errors and slips of inadvertence to be amended, outside of statutes enabling them to amend. *Barber* v. *Swan,* 61 Am. Dec. 127; *Anderson* v. *Coal Co.,* 12 W. Va., 526. We are told that *Laidley* v. *Bright, supra.,* holds that a clerk ought not to be allowed to amend a summons. That was after judgment on a proceeding to reverse, as if such motion were made in this Court; but this amendment was asked while the proceedings were in *fieri,*—a great difference. Courts have held that the omission of seal to an attachment does not invalidate a judgment, as it does not render the writ void. *Wehrmon* v. *Conklin,* 155 U. S. 314, (15 Sup. Ct. 129). In the lucid opinion in *Wolf* v. *Cook,* 40 Fed. 435, it is asserted that an attachment may clearly be amended by allowing the clerk to sign, just as amendment may be made by allowing a seal to be affixed, and many cases are

cited as to seals. So as to signature in *Huntley* v. *Henry*, 37 Vt. 167. Frequently have courts allowed amendments to attachment writs. Wade, Attachm. § 123; *Bank* v. *Matson*, 72 Am. Dec. 208; full note, 61 Am. Dec. 127. All voidable process can be made perfect by amendment, but void cannot be. *Durham* v. *Heaton*, 80 Am. Dec. 275; *Parker* v. *Barker*, 80 Am. Dec. 130. "As a general rule, there must be something by which to amend the process. With this limitation, nearly all defects can be amended." 1 Am. & Eng. Enc. Law, 552. I know it has been said that statutes of amendments do not apply to attachments, and that they are governed by the most strict law. So they ought to be, as regards compliance with the law defining grounds of attachment; but why mere clerical errors of officers in issuing the order, with which the suitor has nothing to do, —why the act of the law, which ought to give the suitor a good writ,—ought not to be made good by amendment, as in other cases, I cannot see. Why technicality should override justice, in even attachment cases, I cannot understand. And herein I find support in the United States Supreme Court, in *Tilton* v. *Cofield*, 93 U. S. 163, holding that, "where no local statute or rule of local law is involved, the power to amend is the same in attachment suits as in others." So *Anderson* v. *Coal Co.*, 12 W. Va., 526, and *Bank* v. *Gettinger*, 4 W. Va., 305. It seems that, after the issuance of the attachment, the clerk's deputy signed it. He only did what at the first he ought to have done, and what, if he had not done it, the court ought to have allowed him to do. But there is another reason operating strongly with me to sustain the attachment, as regards this point. The plaintiffs' attorney designated in a written memorandum on the same paper, below the order, a bank, as indebted to Zeigler, and asked that it be summoned as garnishee; and just below, on the same paper, the clerk signed an order requiring the bank to appear and answer. It is not disputed that this order was properly signed. It is to be read as an annex to the order of attachment. It is senseless and unmeaning unless read with it, as the law allows. That is a recognition by the clerk of the authenticity of the order of attachment. The only object of the signature of the clerk is to show by

what authority the process issued, and its genuineness; and that is done by this garnishee order. *State* v. *Downing*, 48 La. Ann. 1420, (20 South. 907,) supports this view. After completing this opinion, I find the case of *Bank* v. *Gettinger*, 4 W. Va., 305, holding that failure of a clerk to sign a jurat to an affidavit to an attachment will not vitiate a judgment. This strongly sustains our present decision. What more important than record evidence that the affidavit of cause of attachment was sworn to? I find also *Anderson* v. *Coal Co.*, 12 W. Va., 527, holding, as I said above, that all courts have, without statute authority, power to allow officers to correct at any time clerical errors, and allowing a correction of a date in affidavit, and an omission to indorse on an attachment bond its approval.

I think the facts stated are sufficient, *prima facie*, to sustain the grounds of attachment. I need not detail or discuss them, as, like evidence, they vary in each case, and would be no precedent in other cases, and the requirements of the law with regard to the material facts to sustain grounds of attachment have been sufficiently stated in prior cases. *Goodman* v. *Henry*, 42 W. Va., 526, (26 S. E. 528), and citations; *Capehart* v. *Dowery*, 10 W. Va., 130.

The point is made that the supplemental affidavit filed does not positively state that the new facts it gives came to the knowledge of affiant after he made the first affidavit. This is not necessary, because we must assume that new facts became known afterwards, as self-interest would have dictated their statement in the first affidavit. Shall we overthrow an act done under a remedial statute of amendment on such ground? Besides, I think it not necessary to so state, and that facts known to the affiant at the making of the first affidavit, and forgotten by him, or inadvertently omitted, and which he could not say had since come to his knowledge, may be introduced by the second affidavit, and even facts which he then did not deem it necessary to state, because I think·this is a statute mitigating the rigor of the law denying amendments to the substance of an affidavit as to grounds of attachment, as it concerns the very life of the proceeding. This Court has said this statute must be liberally construed, and liberally

applied, as a statute of amendment. *Goodman* v. *Henry*, *supra.* The words of the Code on which this contention is based are not descriptive of the contents of the affidavit, but of the facts to go into it, like the words "to the prejudice of another's right," in the forgery act, which are descriptive of the writing, not the act. *Powell's Case*, 11 Grat. 822.

The point is made that the bill ought not to have been dismissed. The demand was not mature, and attachment without a statute cannot be had until maturity of the demand. *McCluny* v. *Jockson*, 6 Grat. 96; 3 Am. & Eng. Enc. Law (2d Ed.) 1941; Drake, Attachm. § 28. But section 1, chapter 106, Code 1891, allows an attachment in equity for a debt before maturity. If the attachment was bad, and quashed, the bill would fail with it. Wade, Attachm. § 161. I have no doubt that a creditor may assail a fraudulent transfer before maturity of his debt. But the bill, while setting up a fraudulent transfer, does so only as evidence to sustain the attachment, and does not go for the property transferred. Hence the bill could not be sustained, independently of the attachment, on that ground. But as the attachment is good, this becomes immaterial. These views lead us to a reversal of the decree, and the overruling of the motion to quash the attachment and affidavits, and the overruling of the demurrer to the original and amended bills, and we remand the cause.

*Reversed.*